## In re Lcdo. Pedro Cepeda Parrilla.

*Número:* Q-381          *Resuelto:* 30 de enero de 1979

*Pedro Cepeda Parrilla,* compareció por su propio derecho.

RESOLUCIÓN

San Juan, Puerto Rico, a 30 de enero de 1979

En febrero de 1974 Pendleton Tool Industries, Inc. y otras firmas corporativas, representadas por el abogado José L. Matta Ruiz, presentaron demanda en el Tribunal Superior, Sala de Humacao, contra Héctor Figueroa Llanos y su esposa Nereida Benítez, en que reclamaron el pago de $9,152.51 por concepto de mercancía vendídales, más costas y $1,000.00 para honorarios de abogado. Para asegurar la efectividad de la sentencia solicitada, obtuvieron del tribunal una orden para embargar un inmueble propiedad de los demandados. Estos comparecieron en autos representados por el abogado Pedro Cepeda Parrilla, aquí querellado, controvirtieron las alegaciones esenciales de la demanda y formularon reconvención. Oportunamente, en marzo de 1976, recayó sentencia que condenó a los demandados a pagar a las demandantes la cantidad de $8,796.31, costas, y $500.00 de honorarios de abogado, sentencia que advino final y firme treinta días después de archivarse en autos copia de su notificación.

Con motivo de una queja de las demandantes, al no poder éstas hacer efectiva la sentencia, ordenamos a la Administración de los Tribunales investigar las actuaciones del abogado Cepeda Parrilla. Revela dicha investigación, y así lo admitió el querellado, que el embargo en aseguramiento de la sentencia no se hizo efectivo debido a que el querellado solicitó su retiro a las demandantes, a través de su abogado Matta, a base de su compromiso de responder personalmente de la deuda hasta las sumas reclamadas en la demanda. En carta que dirigió el Lcdo. Matta el 26 de junio de 1974 le indicó su propósito de comprar la propiedad objeto del embargo y retener en su poder la cantidad de $10,152.51 ($9,152.51 importe de lo reclamado como adeudado más $1,000 de honorarios de abogado) para en su día hacer efectiva dicha suma o la parte de ella que se dispusiera por sentencia a favor de las

demandantes. Las demandantes y su abogado Matta, confiando en la buena fe del querellado, aceptaron su compromiso y desistieron del embargo.

En efecto el querellado compró la propiedad a sus clientes, la hipotecó por unos $40,000 y luego la retrovendió a éstos. No retuvo cantidad alguna para el pago de la sentencia que pudiera recaer a favor de las demandantes. Una vez obtenida la sentencia mencionada se negó a hacer buena la palabra empeñada e insistió con el Lcdo. Matta que éste debía hacer las gestiones de cobro de la sentencia que fueren necesarias contra sus clientes, los demandados.

La explicación dada por el querellado en el curso de la investigación de sus actuaciones fue que interesaba la propiedad para su negocio de colmado—además de abogado notario es comerciante, dueño de un colmado y de una estación de gasolina en Fajardo—debido a que el sitio en que tenía establecido el negocio de colmado se inundaba y allí vivía además su señora madre, pero luego desistió y retrovendió porque se solucionó su problema y su señora madre no quiso mudarse. Expuso que acordó con sus clientes que éstos depositaran $8,000.00 en el Fajardo Federal Savings para responder a las demandantes, y así lo hicieron, pero sus clientes le fueron convenciendo hasta que paulatinamente retiraron el dinero del banco. (Declaración del querellado, página 4.)

Por resolución de 27 de abril de 1978 concedimos al querellado hasta el 19 de mayo de 1978 para satisfacer el balance insoluto de la sentencia y mostrar causa por la cual no debía ser disciplinado. A esa fecha los demandados habían logrado consignar parte de la suma adjudicada en la sentencia, quedando un balance pendiente de aproximadamente cuatro mil dólares. A dicha resolución sucedieron otras en que prorrogamos el plazo dado al querellado para cumplir su compromiso y finalmente, el 16 de noviembre de 1978 le suspendimos del ejercicio de la abogacía hasta que acreditara haber cumplido nuestras resoluciones de 27 de abril y siguientes. No

es hasta el 9 de enero de 1979 que el querellado acreditó ante nos que se hizo efectiva la sentencia del Tribunal Superior. Su explicación de lo ocurrido se limita ,en síntesis, a puntualizar que actuó de buena fe.

El poder disciplinario que tiene este Tribunal para hacer cumplir los Cánones de Ética Profesional no debe interpretarse para convertirnos en agencia de cobro de las deudas en que puedan incurrir los abogados. No se trata aquí, sin embargo, de una deuda personal de un abogado incurrida en el curso de sus asuntos personales. Se trata de una obligación contraída para con una parte adversa en un litigio, que descansó al aceptarla en la confianza que le mereció el querellado, no como comerciante, sino como abogado. Ello está reñido con el Canon 30 del Código de Ética Profesional. (¹)

Una propiedad embargada por orden de un tribunal se encuentra bajo la custodia del tribunal. El embargo es parte del proceso litigioso. La ética del abogado está reñida con cualquier actuación de éste que implique interés personal en bienes que estén en litigio, o puedan ser objeto de litigio entre la parte que el abogado representa y la parte contraria. La ley prohíbe al abogado adquirir por compra bienes y derechos que fueren objeto de un litigio en que él intervenga por su profesión y oficio. Art. 1348 del Código Civil, 31 L.P.R.A. sec. 3773, último párrafo. Al mismo efecto se expresa el Canon 23 del Código de Ética Profesional. (²)

---

(¹) Dice así:

"Canon 30.—Derecho a Dirigir los Incidentes del Juicio.

"Los abogados, como compañeros de profesión, se deben mutuamente trato generoso y considerado, y las presiones o exigencias de sus clientes no deben impedir tal comportamiento. Corresponde al abogado, no al cliente, siempre que los intereses de éste queden debidamente protegidos, hacer concesiones razonables a un compañero en cuanto a peticiones de tranferencias de vistas, prórrogas, cambios de fechas y sitios para citas o reuniones y sobre el trámite de asuntos incidentales pendientes en un pleito."

(²) Expresa dicho canon:

"Canon 23.—Adquisición de Intereses en Litigio y Manejo de los Bienes del Cliente.

El querellado puede no haber actuado de mala fe al obtener de su compañero Matta la liberación del embargo. Probablemente tenía el propósito de cumplir el compromiso que contraía. Pero es evidente que aparte del interés que pudiera tener en proteger a sus clientes, tenía un interés propio en obtener para sí la propiedad objeto del embargo. Aun en la práctica del comercio, a que paralelamente con el ejercicio de la abogacía se dedicaba el querellado, la ética repudia las argucias que tipifican una competencia desleal.

Considerando que el querellado fue admitido al ejercicio de la abogacía en 1969 y que es ésta la primera ocasión en que tomamos conocimiento de alguna conducta anti ética de su parte, y habiendo cumplido finalmente con nuestro requerimiento de pagar la parte insoluta de la sentencia del Tribunal Superior, Sala de Humacao, nos parece suficiente sanción la suspensión del ejercicio de la abogacía decretada el 16 de noviembre de 1978, que hacemos extensiva hasta el 16 de febrero de 1979, y la censura que aquí hacemos de sus actuaciones en el referido caso.

Lo acordó el Tribunal y certifica el Secretario. El Juez Asociado Señor Martín no intervino.

(Fdo.) Ernesto L. Chiesa
*Secretario*

---

"El abogado no debe adquirir interés o participación alguna en el asunto en litigio que le haya sido encomendado.

"Un abogado no debe adelantar o prometer ayuda financiera a su cliente para gastos médicos o subsistencia, excepto que puede adelantar el pago de las costas del litigio, y los gastos de investigación y de exámenes médicos necesarios para representar debidamente el caso de su cliente.

"La naturaleza fiduciaria de las relaciones entre abogado y cliente exige que éstas estén fundadas en la honradez absoluta. En particular, debe darse pronta cuenta del dinero u otros bienes del cliente que vengan a su posesión y no debe mezclarlos con sus propios bienes ni permitir que se mezclen."