*In re* Jesús M. Rivera Arvelo y Carlos M. Ortiz Velázquez.

*Número:* CP-88-617 *Resuelto:* 4 de marzo de 1993

*Rafael Ortiz Carrión, Procurador General, Anabelle Rodríguez, Procuradora General, Eliadís Orsini Zayas, Procuradora General Auxiliar, y Laura Ydrach Vivoni, Procuradora General Auxiliar*, abogados de El Pueblo; *Enrique Rivera Santana, Comisionado Especial; Andrés García Arache, Arturo Negrón García y S.L. Lagardes Garcés*, abogados de los querellados.

PER CURIAM: El 9 de diciembre de 1987 el Tribunal Superior, Sala de Carolina, dictó sentencia sumaria parcial a favor de los demandantes en la acción sobre nulidad de sentencia, nulidad de acto jurídico, ejecución de hipoteca y daños y perjuicios, caso Civil Núm. 86-259(E), *Suc. Pablo Grillo et al. v. Pedro L. Santoni Román, et al.* Inconformes, varios de los demandados presentaron ante nos un recurso de revisión en el cual solicitaron la revocación de dicha sentencia. Mediante Resolución de 16 de junio de 1988, declaramos no ha lugar el recurso y referimos el expediente del caso al Procurador General para que investigara

la conducta profesional del Lcdo. Jesús M. Rivera Arvelo y del notario público Carlos M. Ortiz Velázquez en relación con los hechos que dieron lugar a la acción. Presentado el informe del Procurador General, el 5 de octubre de 1988 ordenamos la presentación de las querellas correspondientes.

## I

De acuerdo con nuestra orden, el día 27 de octubre de 1988 el Procurador General presentó los cargos siguientes:

### CARGO I

El Lic. Jesús M. Rivera Arvelo actuó en forma ilegal y en contra de los cánones de ética profesional cuando aceptó la propiedad que garantizaba el pagaré hipotecario otorgado el 15 de diciembre de 1975 por Pedro L. Santoni y Benigna Colón de Santoni y la Sociedad Legal de Gananciales compuesta por ambos, por valor de $40,000 vencederos a su presentación al 8 1/2 por ciento de interés anual, autenticado ante el notario Manuel Medina Aymat con el número de affidavit 1798.

El Lic. Jesús M. Rivera Arvelo en consecuencia violó lo dispuesto en la Sección 3773 de 31 LPRA, Sec. 742 con relación a cosa litigiosa porque la transferencia de la propiedad a su persona y/o la Sociedad de Gananciales compuesta por él y su esposa fue una realizada en forma fraudulenta y en contra del interés público por la forma y manera ilegal, en que se realizó la transferencia y posterior cancelación de un pagaré falsificado en sustitución del original; no cayendo la misma en ninguna de las excepciones que establecen dichas disposiciones legales. Por dicha actuación el abogado notario Rivera Arvelo también violó el Canon 23 y 35 de Etica Profesional.

### CARGO II

El Lic. Jesús M. Rivera Arvelo actuó en contra de los cánones de Etica Profesional, por el tipo de gestión profesional que realizó en los procedimientos del caso 86-259, radicado en el Tribunal Superior, Sala de Carolina y su posterior solicitud de revisión ante este Honorable Tribunal Supremo.

El conocimiento real y verdadero que tenía el Lic. Jesús M. Rivera Arvelo de la transacción realizada en torno al pagaré objeto de cobro judicial en dos ocasiones, el alcance de su participación activa en dichos procedimientos judiciales y en la transferencia, aceptación y cancelación fraudulentas del bien objeto de los litigios en que él representaba a la parte deudora —aún reconociendo el derecho del abogado querellado a defenderse de las alegaciones presentadas en su contra— lo sitúan claramente en una situación contraria a los cánones *17, 26* y *35* de los de Etica Profesional porque él sabía que el pagaré original estuvo siempre en poder de la parte reclamante y manejó con artificios los hechos para ofrecer una falsa relación de hechos y de derecho sobre los asuntos relacionados con los casos ventilados ante el Tribunal de Instancia en el caso 86-259 y luego en su presentación del recurso de revisión ante este Honorable Tribunal.

### CARGO III

El abogado-notario Carlos M. Ortiz Velázquez, ante quien se otorgó la escritura número 25 otorgada el 5·de octubre de 1982, violó la Fe Pública Notarial y el canon *35* de los de Etica Profesional.

El abogado notario Carlos M. Ortiz Velázquez no actuó con la debida prudencia y acuciosidad necesaria en el ejercicio de la función pública que permea todo el ejercicio del notariado, pues otorgó un documento y canceló otro pagaré que simula el original, y dio fe de las gestiones propias en este tipo de otorgamiento, cuando en realidad el pagaré cancelado era falso, y por tanto, todos los señalamientos y procedimientos relacionados con dicho acto son falsos y fraudulentos.

Su gestión en la autorización del otorgamiento de la escritura 25 mencionada, así como la cancelación del pagaré objeto de los pleitos judiciales, facilitó el que el Lic. Jesús Rivera Arvelo realizara los actos ilegales, antiéticos y culposos que afectaron además a terceras personas. Querella, págs. 1–3.

Tanto el licenciado Rivera Arvelo como el notario Ortiz Velázquez contestaron la querella. Con respecto al cargo Núm. I, el licenciado Rivera Arvelo sostiene que si bien la Escritura Núm. 25 se otorgó antes de que se notificara la sentencia, el derecho de propiedad cedido no era un bien litigioso, porque al momento de otorgarse la escritura ya el tribunal había dictado, aunque no notificado, la sentencia.

Niega, además, que conociera la falsedad del pagaré hipotecario cancelado mediante la Escritura Núm. 25 y que éste fuera cancelado con intención fraudulenta.

Con respecto al cargo Núm. II, el licenciado Rivera Arvelo aduce en su defensa que el pagaré hipotecario cancelado mediante la Escritura Núm. 25 era válido y que no se le puede imputar conocimiento de que tal pagaré no fue entregado al cedente, Sr. Pedro L. Santoni Román, antes del otorgamiento de dicha escritura.[1] Por lo tanto, sostiene que no incurrió en conducta impropia en su gestión profesional en el caso Civil Núm. 86-259(E) ante el Tribunal Superior, Sala de Carolina.

Por su parte, con respecto al cargo Núm. III, el notario Ortiz Velázquez aduce en su defensa que en ningún momento el licenciado Rivera Arvelo le había informado sobre el origen de los pagarés a ser cancelados ni sobre pleitos en los cuales pudieran estar involucrados dichos pagarés.

## II

Contestada la querella, nombramos a un Comisionado Especial para que presidiera una vista probatoria y rindiera un informe con las determinaciones de hecho que entendiera procedentes. A continuación exponemos los hechos relevantes según éstos surgen de la relación del caso y de las determinaciones de hechos del Comisionado Especial y de los autos del Caso Civil Núm. 77-416 ante el Tribunal Superior, Sala de Caguas, y del Caso Civil Núm. 86-259(E) ante el Tribunal Superior, Sala de Carolina, de los cuales tomamos conocimiento judicial conforme a la Regla 11 de Evidencia, 32 L.P.R.A. Ap. IV.

A. El 15 de diciembre de 1975 el Sr. Pedro L. Santoni

---

[1] En su memorando en respuesta al informe del Comisionado Especial, el licenciado Rivera Arvelo cambió su posición y ahora sostiene que el pagaré era "inválido" y que fue cancelado por "error e inadvertencia" del notario Ortiz Velázquez.

Román y la Sra. Beningna Colón de Santoni suscribieron ante el notario público Manuel Medina Aymat un pagaré hipotecario —Affidávit Núm. 1798— por la suma principal de cuarenta mil dólares ($40,000) e intereses al ocho y medio por ciento (8 1/2%) anual, pagadero al portador y vencedero a su presentación. Para garantizar el cumplimiento de esta obligación, el señor Santoni Román y la señora Colón de Santoni constituyeron una hipoteca de primer rango sobre una finca rústica perteneciente a la sociedad legal de gananciales compuesta por ambos. Esta hipoteca consta en la Escritura Núm. 73 suscrita el mismo 15 de diciembre de 1975 ante el notario Medina Aymat. El texto del pagaré se transcribió totalmente en dicha escritura.[2]

Allá para fines de 1975 o principios de 1976, el señor Santoni Román negoció el pagaré al Sr. Dominico Acevedo, quien a su vez lo negoció al Sr. Pablo Grillo Ramírez a través del hijo de este último, el Sr. Rafael A. Grillo León. El señor Grillo Ramírez compró el pagaré con dinero perteneciente a la sociedad legal de gananciales compuesta por él y su esposa, la Sra. Consuelo León Torres. Luego de la compraventa, el pagaré quedó en posesión del Sr. Rafael A. Grillo León.

El señor Grillo Ramírez falleció en 1976. Los únicos herederos fueron su esposa, la señora León Torres, y sus cuatro (4) hijos, Rafael A., Pedro L., Héctor L. y Víctor M. Al momento de la muerte, nadie había presentado el pagaré para el pago. Éste permaneció en posesión del Sr. Rafael A. Grillo León, quien entonces realizó varios intentos infructuosos de obtener el cumplimiento de la obligación. En una ocasión particular el señor Grillo León fue citado a comparecer a la oficina del Lcdo. Jesús M. Rivera Arvelo, quien era el abogado del señor Santoni Román, para allí recibir el

---

[2] Para este tiempo existía una relación personal de amistad entre el señor Santoni Román y el notario Medina Aymat, ya que desde 1972 éste último había otorgado todos los documentos relacionados con los negocios del señor Santoni Román.

pago. El señor Grillo León compareció con el pagaré, conoció al licenciado Rivera Arvelo, pero no recibió el pago para el cual fue citado.

Por lo tanto, el 20 de abril de 1977 los hijos del señor Grillo Ramírez presentaron ante el Tribunal Superior, Sala de Caguas, una acción de ejecución de hipoteca y cobro de dinero contra los señores Acevedo y Santoni Román, y la sociedad legal de gananciales constituida por cualquiera de ellos y demandados desconocidos (Caso Civil Núm. 77-416). Aunque nombraron como parte demandante a la Sucesión Pablo Grillo Ramírez, no incluyeron como integrante de la sucesión a la viuda del señor Grillo Ramírez, la señora León Torres.

En representación de los codemandados señor Santoni Román y la señora Colón de Santoni compareció el licenciado Rivera Arvelo, quien el 12 de diciembre de 1977 suscribió la contestación a la demanda y la reconvención de los codemandados. En el párrafo cuarto de la reconvención el licenciado Rivera Arvelo solicitó que el Tribunal Superior ordenara "la devolución del pagaré que permanece en *posesión de la parte demandante-reconvencionada* [sic], además de cualquier otro pronunciamiento que en derecho proceda ...". (Énfasis suplido.) Recurso de reconsideración, Apéndice, pág. 73.

Luego de estos trámites iniciales, el caso permaneció inactivo, hasta que el 28 de junio de 1979 el Tribunal Superior ordenó su archivo al amparo de la Regla 11 para la Administración del Tribunal de Primera Instancia del Estado Libre Asociado, 4 L.P.R.A. Ap. II-A. Ante una moción de relevo de sentencia oportunamente presentada, el Hon. Julio N. Berríos Jiménez ordenó la reapertura del caso. Con excepción de una comparecencia escrita del codemandado señor Acevedo, el caso volvió a recaer en inactividad. Por lo tanto, el 24 de junio de 1982 el Tribunal Superior expidió una orden para que las partes mostraran causa por la cual no se debería archivar el caso bajo la Regla 39.2(b)

de Procedimiento Civil, 32 L.P.R.A. Ap. III. Ante las justificaciones insuficientes de las partes, el 21 de julio de 1982 el Hon. Juez Berríos Jiménez dictó sentencia en la que ordenó el archivo con perjuicio del caso.

Al conocer este hecho, el Lcdo. Jorge Figueroa Ortiz, abogado de los demandantes, le pidió al licenciado Rivera Arvelo que le acompañara para solicitar conjuntamente la reapertura del caso. El licenciado Rivera Arvelo accedió. Acto seguido, ambos pasaron ante el Hon. Juez Berríos Jiménez. Este último, luego de escuchar los planteamientos para la reapertura, reafirmó su decisión de archivar el caso con perjuicio. La Secretaría del Tribunal Superior no notificó la sentencia hasta el 18 de octubre de 1982.

A principios de octubre de ese mismo año y antes de notificada la sentencia, el señor Santoni Román y el licenciado Rivera Arvelo llegaron a un acuerdo sobre un pago parcial de honorarios adeudados.(³) Según este acuerdo, el señor Santoni Román, la señora Colón de Santoni y la sociedad legal de gananciales compuesta por ambos cederían como dación en pago su derecho de propiedad sobre la finca rústica gravada con la primera hipoteca que garantizaba la obligación evidenciada por el pagaré hipotecario objeto del pleito.

El licenciado Rivera Arvelo entonces acudió ante el notario público Carlos M. Ortiz Velázquez para que este último autorizara la cesión. Ambos se conocían, ya que tenían sus oficinas en el mismo edificio. Luego de que el licenciado Rivera Arvelo explicara la transacción y presentara los originales de dos (2) pagarés hipotecarios a ser cancelados, así como las respectivas escrituras de hipoteca, el notario Ortiz Velázquez le pidió que sometiera un pro-

---

(³) El licenciado Rivera Arvelo había representado al señor Santoni Román en varias acciones de cobro de dinero en su contra y en una acción criminal que tuvo más de un mes de duración. Para octubre de 1982 el señor Santoni Román le adeudaba al licenciado Rivera Arvelo aproximadamente sesenta mil dólares ($60,000) en honorarios.

yecto de escritura para su revisión. En ningún momento el licenciado Rivera Arvelo hizo mención alguna del pleito ante el Tribunal Superior, Sala de Caguas. El notario Ortiz Velázquez revisó y aceptó el proyecto que le presentó el licenciado Rivera Arvelo.

El 5 de octubre de 1982 comparecieron a la oficina del notario Ortiz Velázquez el licenciado Rivera Arvelo y su esposa, la Lcda. Isabel Delgado, y el señor Santoni Román y su esposa, la señora Colón de Santoni. Todos leyeron y suscribieron la Escritura de Cesión de Derecho Real Mediante Pago de Deuda y Cancelación que consta como Escritura Núm. 25 en el Protocolo de 1982 del notario Ortiz Velázquez. Otorgada la escritura, el licenciado Rivera Arvelo procedió a preparar la certificación que luego firmó el notario Ortiz Velázquez. Este último no cobró honorarios por sus servicios.

Concluido el otorgamiento, el licenciado Rivera Arvelo tomó los documentos para tramitar su inscripción. La escritura se presentó ante el Registro de la Propiedad al día siguiente, 6 de octubre de 1982, esto es, doce (12) días antes de que el Tribunal Superior, Sala de Caguas, notificara la sentencia de archivo por inactividad a favor del señor Santoni Román y su esposa.

Acto seguido, el 8 de octubre de 1982, el licenciado Rivera Arvelo acudió nuevamente ante el notario Ortiz Velázquez y le presentó una instancia para su autorización. Mediante la instancia se proponía solicitar la cancelación de un aviso de *lis pendens* anotado al margen de la inscripción de la finca rústica sobre la cual recaía el derecho de propiedad objeto de la cesión. Dicho aviso correspondía al Caso Civil Núm. 77-416 ante el Tribunal Superior, Sala de Caguas. A pesar de que autorizó la instancia ese mismo día tal y como se la presentó el licenciado Rivera Arvelo, el notario Ortiz Velázquez no se percató de que la finca sujeta al aviso era la misma sobre la cual recaía el derecho de

propiedad cedido al licenciado Rivera Arvelo mediante la Escritura Núm. 25.

La instancia se presentó ante el Registro de la Propiedad el mismo día, esto es, diez (10) días antes de que el Tribunal Superior, Sala de Caguas, notificara la sentencia de archivo por inactividad en el Caso Civil Núm. 77-416. El Registrador de la Propiedad inscribió la Escritura Núm. 25 y canceló el aviso de *lis pendens* el 21 de octubre de 1982.

B. Mediante la Escritura Núm. 25 se cancelaron dos (2) pagarés hipotecarios. En la cláusula primera de la escritura se transcribió el texto de ambos pagarés y se indicó que los originales se unían al Protocolo. Según esta cláusula, uno de los pagarés era un pagaré —Affidavit Núm. 1798— por la suma principal de cuarenta mil dólares ($40,000) e intereses al ocho y medio por ciento (8 1/2%) anual, pagadero al portador y vencedero a la presentación, suscrito el 15 de diciembre de 1975 ante el notario público Manuel J. Medina Aymat por el Sr. Pedro L. Santoni y la Sra. Benigna Colón de Santoni. De la transcripción se desprende, además, que la obligación estaba garantizada por la hipoteca constituida en la Escritura Núm. 73, suscrita por el señor Santoni Román y la señora Colón de Santoni ante el notario Medina Aymat el mismo día 15 de diciembre de 1975.

El texto del pagaré, unido al Protocolo como el original, sin embargo, no correspondía exactamente al texto transcrito en la cláusula primera. El supuesto original especificaba una tasa de interés de nueve por ciento (9%) anual, mientras que la transcripción especificaba una de ocho y medio por ciento (8 1/2%). El resto del texto del supuesto original correspondía a la transcripción. Ni el notario Ortiz Velázquez al autorizar la Escritura Núm. 25 ni el Registrador de la Propiedad al inscribir la misma y cancelar la hipoteca sobre la finca, se percataron de la discrepancia.

El texto transcrito en la cláusula primera correspondía al pagaré hipotecario en posesión del Sr. Rafael A. Grillo

León y objeto del pleito ante el Tribunal Superior, Sala de Caguas. El pagaré cancelado llevaba el mismo número de affidávit, especificaba la misma suma de principal, indicaba estar garantizado por la misma hipoteca y parecía haber sido firmado por el notario Medina Aymat, el señor Santoni Román y la señora Colón de Santoni. Por lo tanto, en virtud de la inscripción de la Escritura Núm. 25 se canceló la hipoteca que garantizaba el cumplimiento de la obligación evidenciada por el pagaré hipotecario en posesión del Sr. Rafael A. Grillo León.

C. El 30 de enero de 1986 la Sucesión Pablo Grillo Ramírez, la señora León Torres inclusive, inició ante el Tribunal Superior, Sala de Carolina, una acción sobre nulidad de acto jurídico, ejecución de hipoteca y daños y perjuicios contra el señor Santoni Román, la señora Colón de Santoni y la sociedad legal de gananciales compuesta por ambos, y contra el licenciado Rivera Arvelo, la Lcda. Isabel Delgado y la sociedad legal de gananciales compuesta por ambos. La parte demandante alegó que el pagaré cancelado en la Escritura Núm. 25 era una simulación del pagaré hipotecario en su posesión y solicitó, entre otras cosas, que se declarara nula la cancelación efectuada en virtud de dicha escritura y su respectiva inscripción en el Registro de la Propiedad.

En su contestación de 26 de febrero de 1986, el licenciado Rivera Arvelo compareció por derecho propio y negó todas las alegaciones de la demanda, dos (2) de ellas por falta de información y creencia. Bajo este último fundamento, negó: (1) que la sociedad legal de gananciales compuesta por el señor Santoni Román y la señora Colón de Santoni era titular del "inmueble hipotecado para la fecha de otorgamiento del pagaré hipotecario" que alegadamente estaba en posesión de la Sucesión Pablo Grillo Ramírez, y (2) que en tal pagaré "se convino expresamente que éste vencería a su presentación".

Junto a su contestación, el licenciado Rivera Arvelo pre-

sentó una reconvención en la que reclamó daños y perjuicios por las expresiones alegadamente difamatorias de la demanda. Por otro lado, ese mismo día presentó una demanda contra tercero contra el abogado de la parte demandante, el Lcdo. Rafael A. Díaz Díaz, en la que reclamó daños y perjuicios por la manera "frívola y difamatoria" en la que éste alegadammente había presentado la demanda en representación de la Sucesión Pablo Grillo Ramírez.

Acto seguido, el 21 de abril de 1986 la parte demandante solicitó permiso para enmendar la demanda para así incluir como acción la impugnación de la validez de la sentencia que dictó el Tribunal Superior, Sala de Caguas, en el Caso Civil Núm. 77-416. Cinco (5) días más tarde, el licenciado Rivera Arvelo solicitó que se enmendaran retroactivamente todas sus alegaciones para aclarar que comparecía en representación de todos los demandados, excepto de la señora Colón por desconocer su paradero. Para esta fecha, el matrimonio entre el señor Santoni Román y la señora Colón había sido disuelto mediante divorcio.

Después de varios incidentes entre los cuales cabe destacar la expedición de dos (2) sentencias parciales en las cuales se desestimaron tanto la reconvención como la demanda contra tercero, allá para el mes de mayo de 1987 los demandados, con excepción de la señora Colón, presentaron una moción en la que solicitaron que se dictara sentencia sumaria a su favor bajo la doctrina de cosa juzgada. La parte demandante se opuso oportunamente y, a su vez, presentó su propia moción de sentencia sumaria debidamente acompañada con documentos y declaraciones juradas. Los demandados no comparecieron a oponerse a esta moción.

Entre los *exhibit* que acompañaron su moción, la parte demandante incluyó una copia del pagaré en su posesión y una copia del pagaré cancelado mediante la Escritura Núm. 25. Acompañó, además, una declaración jurada del

notario Medina Aymat de 29 de abril de 1986 en la cual este último manifestó:

> 8. Que el pagaré cancelado mediante la escritura #25, otorgado en San Juan, Puerto Rico, el 5 de octubre de 1982, ante el notario, Carlos M. Ortiz Velázquez, no es el pagaré que se describe en la escritura #73 sobre hipoteca otorgada el 15 de diciembre de 1975, ante mi persona.

> 10. De igual forma, el pagaré cancelado mediante la escritura #25 otorgado [sic] el 5 de octubre de 1982, ante el Notario, Carlos M. Ortiz Velázquez, no conlleva mi firma, sino que la que allí aparece es una simulación de ésta. Declaración Jurada de 29 de abril de 1986, pág. 2.

El notario Medina falleció en algún momento después de suscribir dicha declaración y antes de comenzados los procedimientos ante el Comisionado Especial.

Mediante Sentencia Parcial de 9 de diciembre de 1978, el Tribunal Superior, Sala de Carolina, denegó la moción de los demandados y declaró con lugar la moción de la parte demandante. Como cuestión de hecho, el tribunal determinó que el pagaré hipotecario cancelado mediante la Escritura Núm. 25 no era el pagaré original que se había otorgado como Affidávit Núm. 1798 ante el notario Medina Aymat el 15 de diciembre de 1975. A manera de remedio decretó, por lo tanto, la nulidad de la Sentencia de 21 de julio de 1982 en el Caso Civil Núm. 77-416 ante el Tribunal Superior, Sala de Caguas, y la nulidad de la Escritura Núm. 25 y su correspondiente inscripción en el Registro de la Propiedad.

Dentro de los diez (10) días de la notificación de dicha sentencia, los demandados, con excepción de la señora Colón, solicitaron unas enmiendas a las determinaciones de hechos. A pesar de que el tribunal denegó dicha solicitud el 29 de febrero de 1988, la Secretaría del Tribunal Superior, Sala de Carolina, no notificó la resolución hasta el 25 de abril de 1988.

Inconformes, el 24 de mayo de 1988 los demandados, con excepción de la señora Colón, presentaron ante nos una solicitud de revisión en la cual solicitaron la revocación de la sentencia sumaria parcial dictada el 9 de diciembre de 1987. Mediante Resolución de 16 de junio de 1988, denegamos la solicitud y referimos el expediente del caso a la Oficina del Procurador General.

Con respecto a la señora Colón, el 7 de abril de 1988 el tribunal dictó una sentencia en rebeldía en su contra en la cual le concedió a la parte demandante los mismos remedios que le había concedido en la sentencia sumaria parcial de 9 de diciembre de 1987. La señora Colón no solicitó revisión de esta sentencia.

D. En torno a la autenticidad del pagaré hipotecario —Affidávit Núm. 1798— cancelado mediante la Escritura Núm. 25, el Comisionado Especial determinó que la firma del notario Medina Aymat era una firma simulada. En particular, concluyó que "[a]unque se tomó como base para la simulación una firma auténtica del Notario [Medina Aymat], fue hecha por alguien que conocía la firma, que estaba familiarizado con el Notario y que tenía acceso a su oficina". Relación del caso y determinaciones de hechos del Comisionado Especial, pág. 16. Determinó, además, que las firmas del señor Santoni Román y su esposa eran genuinas. Para llegar a estas determinaciones el Comisionado Especial tuvo el beneficio de los testimonios de los examinadores forenses de documentos que presentaron tanto el Procurador General como el licenciado Rivera Arvelo. Ambos examinadores rindieron informes contradictorios sobre la autenticidad de la firma del notario Medina Aymat.

En cuanto a las diferencias entre el pagaré cancelado mediante la Escritura Núm. 25 y el pagaré en posesión del Sr. Rafael A. Grillo León, el Comisionado Especial señaló: (1) que el pagaré cancelado especifica una tasa de interés anual de nueve por ciento (9%), mientras que el otro pa-

garé especifica una de ocho y medio por ciento (8 1/2%), y (2) que en el pagaré cancelado la firma de la entonces señora Colón de Santoni aparece debajo de su nombre escrito a máquina, mientras que en el otro aparece por encima.

## III

Tanto el Procurador General como el notario Ortiz Velázquez manifestaron estar conformes con la relación del caso y las determinaciones de hechos del Comisionado Especial. El licenciado Rivera Arvelo, por su parte, objetó la determinación con respecto a la simulación de la firma del notario Medina Aymat en el pagaré hipotecario —Affidávit Núm. 1798— cancelado mediante la Escritura Núm. 25. Sostiene, en síntesis, que el Comisionado Especial erró al aceptar la opinión del examinador forense de documentos que presentó el Procurador General. Solicita, por lo tanto, que se adopte la opinión de su perito y se acepte como genuina la firma del notario Medina Aymat en dicho pagaré. Es la contención del licenciado Rivera Arvelo que de así proceder se corroboraría su versión de los hechos.

De acuerdo con esta versión, el 15 de diciembre de 1975 el señor Santoni Román y la entonces señora Colón de Santoni suscribieron ante el notario Medina Aymat un pagaré hipotecario —Affidávit Núm. 1798— que especificaba una tasa de interés anual de nueve por ciento (9%). Al día siguiente y luego de que el notario Medina Aymat les comunicara que la tasa de interés era ilegal, procedieron a suscribir otro pagaré idéntico pero que especificaba una tasa de interés de ocho y medio por ciento (8 1/2%). Sostiene el licenciado Rivera Arvelo que por error el primer pagaré nunca se destruyó y que permaneció entre los documentos que luego el señor Santoni Román alegadamente le entregó al notario Ortiz Velázquez para que este último preparara la Escritura Núm. 25. Al recibir el pagaré con la tasa de interés de nueve por ciento (9%), el notario Ortiz Velázquez

procedió a cancelarlo y ni el licenciado Rivera Arvelo ni el señor Santoni Román se percataron de que ese pagaré no debió haber sido cancelado en dicha escritura.

El Comisionado Especial no dio crédito a esta versión. En particular, determinó que fue el licenciado Rivera Arvelo quien entregó el pagaré al notario Ortiz Velázquez y quien se encargó de la redacción del proyecto de escritura. Por lo tanto, el Comisionado Especial concluyó que el licenciado Rivera Arvelo sabía que el pagaré que se estaba cancelando mediante la Escritura Núm. 25 no era el pagaré en posesión del Sr. Rafael A. Grillo León y que la hipoteca que se estaba cancelando mediante dicha escritura era la que garantizaba este último pagaré.

■ En ausencia de prejuicio, parcialidad o error manifiesto del Comisionado Especial al apreciar la prueba, no alteraremos las determinaciones de hechos que, como en este caso, están sostenidas por la prueba testifical y documental. Regla 41.5(b) de Procedimiento Civil, 32 L.P.R.A. Ap. III; *In re Colton Fontán*, 128 D.P.R. 1 (1991). El notario Ortiz Velázquez testificó claramente que fue el licenciado Rivera Arvelo quien le entregó el pagaré y quien se ocupó de la redacción del proyecto de escritura. Prueba adicional de esto último es el hecho de que la Escritura Núm. 25 fue la única escritura de cancelación de pagarés en el Protocolo del notario Ortiz Velázquez de 1982 en la cual se transcribió el texto de los pagarés cancelados.

En cuanto a la prueba pericial, a pesar de que estamos en la misma posición que el Comisionado Especial para evaluar dicha prueba, concurrimos con el criterio del Comisionado Especial de que tal evaluación no es necesaria para resolver el caso ante nos. El hecho determinante en este caso es que al momento de suscribir la Escritura Núm. 25 el licenciado Rivera Arvelo sabía que mediante dicha escritura se estaba cancelando la hipoteca que garantizaba

la obligación evidenciada por el pagaré que él sabía que estaba en posesión del Sr. Rafael A. Grillo León.

## IV

Atendemos, en primer lugar, el cargo Núm. I contra el licenciado Rivera Arvelo. Este cargo, a su vez, contiene dos (2) imputaciones. Por un lado, el cargo le imputa al licenciado Rivera Arvelo una violación al Canon 23 del Código de Ética Profesional, 4 L.P.R.A. Ap. IX, por adquirir un derecho de propiedad en la finca involucrada en el litigio que le fue encomendado por el señor Santoni Román. Por otro lado, le imputa una violación al Canon 35 del Código de Ética Profesional, 4 L.P.R.A. Ap. IX, por faltar a la veracidad de los hechos en la preparación y el otorgamiento de la escritura mediante la cual adquirió del señor Santoni Román dicho derecho de propiedad. Procedemos a atender cada una de estas imputaciones.

El Canon 23 del Código de Ética Profesional, *supra*, en la parte pertinente, dispone que "[e]l abogado no debe adquirir interés o participación alguna en el asunto en litigio que le haya sido encomendado". Es una de las modalidades de esta prohibición que un abogado no debe adquirir interés o participación alguna en bienes o derechos que estén en litigio o que puedan ser objeto de litigio entre la parte que el abogado representa y la parte contraria. Véanse: *In re Castro Mesa et al.*, 131 D.P.R. 1037 (1992); *In re Cepeda Parrilla*, 108 D.P.R. 353 (1979). Por lo tanto, si los bienes o derechos están en litigio, el Canon 23 del Código de Ética Profesional, *supra*, prohíbe que un abogado que represente a una de las partes en tal litigio adquiera, directa o indirectamente, algún interés o participación en dichos bienes o derechos. Esta prohibición persigue prevenir aquellos conflictos de intereses que pudieran interferir con el ejercicio de un juicio profesional independiente por

parte del abogado a quien el cliente le encomendó su representación.

En el presente caso, el licenciado Rivera Arvelo adquirió un interés propietario en la finca objeto de la acción de cobro de dinero y ejecución de hipoteca después de que el Tribunal Superior, Sala de Caguas, dictara la sentencia, pero antes de que la Secretaría de dicho tribunal notificara la misma. Es claro, por lo tanto, que al momento de la adquisición, el litigio no había terminado aún. Por un lado, la sentencia no había surtido efecto alguno ya que no se había archivado en autos copia de la notificación de la misma. Regla 46 de Procedimiento Civil, 32 L.P.R.A. Ap. III; *Pueblo v. Hernández Maldonado*, 129 D.P.R. 472 (1991). Por otro lado, en ausencia de dicho archivo, los términos para solicitar la reconsideración y para presentar un recurso de revisión no habían comenzado a contar. Regla 46 de Procedimiento Civil, *supra*. Basta con considerar el supuesto de que se hubiese declarado con lugar cualquiera de esos dos (2) recursos postsentencia para desacreditar la posición del licenciado Rivera Arvelo de que la finca perdió su carácter litigioso cuando el Tribunal Superior, Sala de Caguas, dictó la sentencia a favor de sus clientes. Es forzosa la conclusión, por ende, de que el licenciado Rivera Arvelo adquirió su interés propietario en la finca mientras ésta aún era objeto de un litigio en el cual él representaba a las partes demandadas. Este acto constituyó una clara y patente violación al Canon 23 del Código de Ética Profesional, *supra*.

## V

■ En cuanto a la segunda imputación contenida en el cargo Núm. I, el Canon 35 del Código de Ética Profesional, *supra*, en las partes pertinentes, dispone que "[l]a conducta de cualquier miembro de la profesión legal ... en las relaciones con sus compañeros debe ser sincera y honrada" y

que "[e]l abogado debe ajustarse a la sinceridad de los hechos ... al redactar afidávit u otros documentos ...". Bajo este canon hemos sancionado disciplinariamente a aquellos abogados que, abusando de la confianza de los compañeros de la profesión, han propiciado que estos últimos otorguen documentos que no se ajustan a la sinceridad de los hechos. *In re Laboy*, 113 D.P.R. 476 (1982).

En este caso el licenciado Rivera Arvelo acudió ante su compañero, que tenía con oficinas en el mismo edificio, el notario Ortiz Velázquez, para que éste otorgara la escritura mediante la cual el señor Santoni Román y su esposa cederían al licenciado Rivera Arvelo y a su esposa el derecho de propiedad sobre la finca litigiosa y se cancelarían dos (2) pagarés y las hipotecas correspondientes. El notario Ortiz Velázquez accedió a la solicitud y le pidió al licenciado Rivera Arvelo que preparara un proyecto de escritura.

A pesar de que el licenciado Rivera Arvelo conocía que la finca y una de las hipotecas a ser canceladas eran objeto del Caso Civil Núm. 77-416 entonces pendiente ante el Tribunal Superior, Sala de Caguas, y que el pagaré garantizado por tal hipoteca estaba en posesión de uno de los demandantes en dicho caso, el licenciado Rivera Arvelo entregó un proyecto en el cual no se hizo mención alguna de estos hechos pero en el cual se proponía cancelar dicho pagaré y su correspondiente hipoteca. Para lograr este fin transcribió fielmente en la cláusula primera del proyecto el texto del pagaré en posesión del señor Rafael A. Grillo León y acompañó el proyecto con un pagaré cuyo texto era virtualmente idéntico al texto transcrito, con excepción de la tasa de interés especificada. El pagaré acompañado no era el pagaré en posesión del señor Grillo León.

El notario Ortiz Velázquez aceptó el proyecto presentado, por lo que éste eventualmente se convirtió en la Escritura Núm. 25, sobre Cesión de Derecho Real Mediante Pago de Deuda y Cancelación, que se otorgó el 5 de octubre

de 1982. En ningún momento durante el intercambio inicial entre él y el notario Ortiz Velázquez ni durante el otorgamiento de la escritura el licenciado Rivera Arvelo le informó sobre el caso civil entonces pendiente ante el Tribunal Superior, Sala de Caguas, o sobre el hecho de que el pagaré original se encontraba en posesión del señor Grillo León. Por consiguiente, al otorgarse e inscribirse la Escritura Núm. 25 se canceló la hipoteca que garantizaba el cumplimiento de la obligación evidenciada por el pagaré en posesión del señor Grillo León, pero no se canceló dicho pagaré sino otro casi idéntico. Para fines del Registro de la Propiedad, sin embargo, el pagaré cancelado fue el pagaré en posesión del señor Grillo León.

Si bien el notario Ortiz Velázquez no tuvo conocimiento actual del efecto de la inscripción de la Escritura Núm. 25 sobre la garantía hipotecaria del pagaré en posesión del señor Grillo León, el licenciado Rivera Arvelo sí tuvo conocimiento de dicho efecto. Tan es así que tres (3) días después de otorgada la escritura, el licenciado Rivera Arvelo acudió nuevamente ante el notario Ortiz Velázquez para que este último autorizara la instancia para cancelar el aviso de *lis pendens* referente al Caso Civil Núm. 77-416, entonces pendiente ante el Tribunal Superior, Sala de Caguas, al cual estaba sujeta la finca. Es forzosa, por ende, la conclusión de que el licenciado Rivera Arvelo propició que el notario Ortiz Velázquez otorgara una escritura que no se ajustaba a la sinceridad de los hechos según éstos le constaban al licenciado Rivera Arvelo de propio y personal conocimiento. Esta actuación por parte del licenciado Rivera Arvelo constituyó una gravísima violación al deber de sinceridad y honradez que el Canon 35 del Código de Ética Profesional, *supra*, reconoce como el deber de todo abogado para con sus compañeros de la profesión.

# VI

Atendemos ahora el cargo Núm. II contra el licenciado Rivera Arvelo. Este cargo le imputa violaciones a los Cánones 17, 26 y 35 del Código de Ética Profesional, 4 L.P.R.A. Ap. IX, por su gestión profesional en representación de los demandados en el Caso Civil 86-259 ante el Tribunal Superior, Sala de Carolina, y en la presentación ante nos de una solicitud de revisión de la sentencia parcial dictada en dicho caso el 9 de diciembre de 1987.

El Canon 17 del Código de Ética Profesional, *supra*, en la parte pertinente, dispone que la comparecencia de un abogado "ante un tribunal debe equivaler a una afirmación sobre su honor de que en su opinión el caso de su cliente es uno digno de la sanción judicial" y que "[l]a firma de un abogado en una alegación en un caso equivale a certificar que ha leído la alegación y que de acuerdo con su mejor conocimiento, información y creencia está bien fundada". Por su parte, el Canon 25 del Código de Ética Profesional, 4 L.P.R.A. Ap. IX, declara que es altamente impropio entablar pleitos viciosos e instigar falsas defensas. Por último, el Canon 35 del Código de Ética Profesional, *supra*, le impone a todo abogado un deber de honradez y sinceridad para con los tribunales y con los demás compañeros de la profesión.

Luego de evaluar los autos del Caso Civil Núm. 86-259(E) ante el Tribunal Superior, Sala de Carolina, y del recurso de revisión presentado ante nos, concluimos que la gestión profesional del licenciado Rivera Arvelo fue de tal naturaleza que no puede evadir sanción disciplinaria. En particular, señalamos que a pesar de que los hechos alegados le constaban de propio y personal conocimiento, el licenciado Rivera Arvelo negó todas las alegaciones de la demanda. Más tarde, en su contestación a la demanda enmendada, aceptó algunas de las alegaciones que había ne-

gado anteriormente. Presentó, además, una reconvención y una demanda contra tercero totalmente frívolas y carentes de méritos que fueron propiamente declaradas sin lugar por el Tribunal Superior. Por último, su gestión ante dicho tribunal se caracterizó por el repetido incumplimiento de órdenes y por la falta de notificación a la parte contraria de varios de los escritos allí presentados. Debido a esta conducta, la parte contraria se vio obligada a acudir en repetidas ocasiones ante el tribunal para exigir que el licenciado Rivera Arvelo cumpliera con las órdenes y notificara oportunamente los escritos.

Aun reconociendo el derecho del licenciado Rivera Arvelo a defenderse de las alegaciones en su contra, era también su obligación ejercer ese derecho de una manera cónsona con los ideales y las normas exigidas en los cánones de ética profesional. Por así no hacerlo, encontramos que la gestión profesional del licenciado Rivera Arvelo estuvo reñida con los Cánones 17, 25 y 35 del Código de Ética Profesional, *supra*.

## VII

Pasamos, por último, al cargo Núm. III contra el notario Ortiz Velázquez, el cual le imputa una violación a la fe pública notarial y al Canon 35 del Código de Ética Profesional, *supra*, por no haber actuado con la debida prudencia y cautela al otorgar la Escritura Núm. 25 y allí faltar a la veracidad de los hechos mediante la cancelación de un pagaré que no era el original.

Repetidamente hemos señalado que la notaría es una función de cuidado que debe ser ejercida con suma diligencia y celo profesional. *In re Vergne Torres*, 121 D.P.R. 500 (1988); *In re Rodríguez Mena*, 126 D.P.R. 205 (1990); *In re Cruz Ramos*, 127 D.P.R. 1005 (1991). En el ejercicio de esta función el notario viene obligado a cumplir estric-

tamente con la ley notarial, los Cánones de Ética Profesional y el contrato entre las partes. La inobservancia de esta obligación expone al notario a la acción disciplinaria correspondiente. *In re Rodríguez Báez*, 129 D.P.R. 819 (1992); *In re Bringas Rechani*, 128 D.P.R. 132 (1991).

Como custodio de la fe pública, cuando un notario autoriza un documento presuntamente da fe y "asegura que ese documento cumple con todas las formalidades de ley, formal y sustantivamente, que el documento es legal y verdadero, y que se trata de una transacción válida y legítima". *In re Feliciano Ruiz*, 117 D.P.R. 269, 275 (1986). Faltar a la veracidad de los hechos es, por lo tanto, una de las faltas más graves que como custodio de dicha fe puede cometer un notario. *In re Landing; y Aulet*, 107 D.P.R. 103 (1978); *In re Cruz Tollinche*, 105 D.P.R. 500 (1976). No sólo quebranta la fe pública notarial, sino también socava la integridad de la profesión al incumplir con el deber de honradez y sinceridad que a todo abogado le impone el Canon 35 del Código de Ética Profesional, *supra*.

Para incurrir en esta falta no es necesario que el notario haya faltado a la verdad intencionalmente. *In re Chaar Cacho*, 123 D.P.R. 655 (1989). Puede ser resultado de una labor carente del celo y la cautela que exige la función pública del notario o de excesiva confianza en las manifestaciones de un compañero de la profesión. *In re Chaar Cacho*, supra; *In re Laboy*, supra; In re Meléndez Pérez, 104 D.P.R. 770 (1976).

En el presente caso el notario Ortiz Velázquez no faltó a la verdad intencionalmente. No hay indicio alguno de que haya actuado de mala fe o con la intención de engañar. Su falta fue más bien el fruto del descuido y de su confianza en el licenciado Rivera Arvelo. A pesar de que le pidió al licenciado Rivera Arvelo que preparara un proyecto de escritura, el notario Ortiz Velázquez tuvo amplia oportunidad de revisar el proyecto, los pagarés y las escrituras que los

garantizaban. Aún así, no se percató de que la tasa de interés especificada en el supuesto original a ser cancelado no correspondía a la tasa especificada tanto en el proyecto como en la escritura de hipoteca. Un examen cuidadoso de estos tres (3) documentos hubiese alertado al notario Ortiz Velázquez de la discrepancia.

Por otro lado, el notario Ortiz Velázquez descansó en la manifestación que le hiciera el licenciado Rivera Arvelo de que él había verificado el Registro de la Propiedad y que no había problema alguno con la transacción. No obstante, pudo haber descubierto la existencia del Caso Civil Núm. 77-416, entonces pendiente ante el Tribunal Superior, Sala de Caguas, cuando unos días después del otorgamiento de la Escritura Núm. 25 le autorizó al licenciado Rivera Arvelo la instancia para solicitar la cancelación del aviso de *lis pendens* correspondiente a dicho caso. El aviso se refería precisamente a la finca sobre la cual recaía el derecho de propiedad cedido al licenciado Rivera Arvelo unos días antes.

El ejercicio de un grado más alto de prudencia durante la autorización de la instancia o durante el otorgamiento de la Escritura Núm. 25 hubiese alertado al notario Ortiz Velázquez de las graves irregularidades que conllevaba la transacción. Su descuido y la confianza en su compañero, sin embargo, lo llevaron a faltar a la veracidad de los hechos y evitaron que descubriera dicha falta después de haberla cometido. Considerando el efecto de esta actuación sobre el esquema de autenticidad documental y sobre los derechos e intereses de la Sucesión Pablo Grillo Ramírez, este Foro no puede permitir que quede impune. La responsabilidad del notario es personal, indivisible e indelegable. *In re González González*, 119 D.P.R. 496, 499 (1982); *In re Laboy*, supra.

## VIII

 Al determinar la sanción disciplinaria que ha de imponerse a un abogado que ha incurrido en conducta impropia, acostumbramos considerar, entre otras cosas, el previo historial del abogado, si se trata de una primera falta o de una conducta aislada y si el abogado goza de buena reputación en la comunidad. *In re Bermúdez Rivera*, 123 D.P.R. 615 (1989); *In re Calderón Marrero*, 122 D.P.R. 557 (1988).

En el caso del Lcdo. Jesús M. Rivera Arvelo, ésta no es la primera vez que una querella sobre su conducta profesional llega ante nos. En dos (2) ocasiones anteriores le apercibimos que en el futuro debería cumplir cabalmente con el Código de Ética Profesional. Según demuestra este caso, el licenciado Rivera Arvelo hizo caso omiso a nuestros avisos. Dada la gravedad de su conducta de obtener un interés propietario en un bien litigioso antes de terminado el litigio, de inducir a un compañero notario a faltar a la veracidad de los hechos y de hacer una gestión profesional reñida con la ética, decretamos la suspensión indefinida del Lcdo. Jesús M. Rivera Arvelo del ejercicio de la abogacía y la notaría.

En el caso del notario Carlos M. Ortiz Velázquez, el Comisionado Especial indicó que las partes habían estipulado que durante los años que ha ejercido la profesión como abogado y notario, sus actuaciones han estado dentro de las normas que exige la profesión legal y que en el ejercicio de la profesión ha exhibido una conducta enmarcada dentro de las normas de honestidad. Nos consta, sin embargo, que en dos (2) ocasiones anteriores la oficina del Director de Inspección de Notarías nos refirió informes sobre deficiencias en la obra notarial del notario Ortiz Velázquez. El 15 de junio de 1988, a raíz del último de estos informes y de la querella presentada en este caso, ordenamos su suspensión provisional del ejercicio de la notaría hasta tanto se

dilucidara definitivamente dicha querella. El notario Ortiz Velázquez, por lo tanto, lleva suspendido del ejercicio de la notaría un período aproximado de cinco (5) años. Consideramos que dicha suspensión es sanción disciplinaria suficiente por las faltas aquí encontradas.

*Se dictará la correspondiente sentencia.*

El Juez Asociado Señor Negrón García se inhibió. El Juez Asociado Señor Rebollo López no intervino.