Pabón Chameco, Jueza Ponente
*1042 TEXTO COMPLETO DE LA SENTENCIA
Comparece ante nos, Héctor Luis Vélez Rodríguez, en adelante, el apelante, solicitando la revocación de una Sentencia del Tribunal de Primera Instancia, Sala Superior de Ponce. Mediante dicho dictamen, el tribunal a quo declaró Con Lugar la demanda sobre sentencia declaratoria interpuesta por Ana Luisa Vélez Rodríguez y Antonio Rafael Vélez Rodríguez, en adelante, los apelados.
Por los fundamentos que expondremos a continuación, se Confirma la Sentencia apelada:
.1
Conforme surge del recurso ante nuestra consideración, mediante la Escritura Núm. 29 de 3 de octubre de 1963, Don Antonio Vélez Pérez y Doña Rafaela Valentina Rodríguez, en adelante, la donante, padres de las partes del pleito de marras, adquirieron una propiedad inmueble sita en Guánica, Puerto Rico. Dicha propiedad consta inscrita al folio 31 del tomo 24, finca núm. 649 de Guánica del Registro de la Propiedad de San Germán.
Don Antonio Vélez Pérez falleció en el 1985 dejando bienes muebles e inmuebles. Surge de la.Cancelación de Gravamen de Caudal Relicto de. éste que su participación en el inmueble antes descrito fue valorado en $27,110.50. Esta participación fue distribuida entre las partes del caso de autos y en la cuota viudal usufructuaria a favor de la donante. Este hecho aparece debidamente inscrito en la segunda inscripción del Registro de la Propiedad. ,• ,
El 3 de enero de 1994, la donante otorgó la Escritura Núm. 2 sobre Testamento Abierto. A su vez, el 15 de octubre de 1995, otorgó la Escritura Núm. 16 sobre Donación, ante el Notario Miguel Arcángel Arroyo Díaz, en adelante, el Notario. Esta última escritura es génesis de- la controversia del caso de autos. En dicha fecha, asimismo, otorgó la Escritura Núm. 16 sobre Poder General, designando como su mandatario al apelante.
En la Escritura de Donación antes mencionada, la donante le cedió al apelante una participación de cincuenta (50) por ciento sobre el solar antes descrito. Surge de dicho documento que el Notario hizo constar que al acto comparecía la señora Fioldalisa Taveras Francisco, como testigo instrumental, todá vez que la donante, por su avanzada edad, no podía leer ni escribir. Asimismo, el Notario dio fe de que la donante tenía la capacidad legal necesaria para otorgar la Escritura de Donación, de la unidad de acto y que había estampado sus huellas en todos los folios de dicho documento.
*1043 El 27 de febrero de 1996, la donante falleció dejando como únicos y universales herederos a las partes del caso de autos.
Así las cosas, mediante el Acta Núm. 235 de 23 de julio de 1998, la Escritura de Donación fue subsanada a fin de hacer constar que la misma había sido leída dos (2) veces en alta voz, a saber por el Notario y por la testigo instrumental, señora Fioldalisa Taveras Francisco, en adelante, testigo instrumental.
El 3 de diciembre de 1998, los apelados incoaron una demanda sobre sentencia declaratoria contra su hermano, el apelante. En dicho escrito, le solicitaron al tribunal a quo, entre otros extremos, que determinara la nulidad de la donación efectuada por su madre, la donante. Los apelados alegaron que dicha escritura era nula por no habérsele dado lectura a la misma conforme el ordenamiento jurídico vigente.
Asimismo, surge de la demanda incoada que los apelados le solicitaron al Tribunal de Primera Instancia le impusiera al apelante el pago de una renta con carácter retroactivo por utilizar el solar objeto de la donación para su beneficio. 
El apelante presentó su contestación a la demanda y reconvención en la cual solicitó, en síntesis: que se determinara que la donación del solar era válida; y que la participación de los apelados en el solar era de dos terceras partes del cincuenta (50) por ciento de dicho terreno.
Trabada la controversia y, luego de varios incidentes procesales, el apelante presentó una “Moción Solicitando Sentencia Sumaria”, alegando que, a tenor con la Escritura de Donación y la posterior Acta de Subsanación, era dueño del inmueble antes mencionado. En su oposición a la solicitud, los apelados cuestionaron la existencia y procedencia de la donación y solicitaron se declarara su nulidad, toda vez que no se habían cumplido con los requisitos establecidos en la Ley Núm. 75 de 2 de julio de 1987, según enmendada, conocida como “Ley Notarial de Puerto Rico”, ni en el Reglamento Notarial, respecto a la lectura del instrumento. En específico alegaron que, conforme surge de la Escritura de Donación, la donante no podía leer ni escribir al momento de otorgarse la escritura debido a su avanzada edad, por lo que a tenor con la Ley y el Reglamento Notarial, era necesario que se le diera lectura a la escritura dos (2) veces. Argüyeron que este hecho no constaba en la escritura. En cuanto a la posterior Acta de Subsanación otorgada por el Notario para hacer constar que la Escritura de Donación había sido leída dos (2) veces, una por él y otra por la testigo instrumental, señalaron que la misma no había corregido el defecto. Alegaron que el Acta de Subsanación era contradictoria a una declaración jurada suscrita por la testigo instrumental el 17 de mayo de 1999, donde declaró que la escritura había sido leída solamente una (1) vez por el Notario. 
Mediante Resolución dictada el 1 de febrero de 2000, notificada el 4 de febrero de 2000, el Tribunal de Primera Instancia denegó la solicitud de sentencia sumaria por entender que existían controversias sobre hechos, materiales. Sin embargo, concluyó que la donación realizada mediante la escritura pública había cumplido con los requisitos de oferta, aceptación y conocimiento de la aceptación por parte de la donante, y que el Notario había cumplido con su deber de consignar en el documento las advertencias legales; que la donante había estampado sus huellas en todos sus folios, porque no podía leer ni escribir y que la escritura se leyó dos (2) veces en voz alta, una por la testigo instrumental y otra por el Notario, conforme dispone la ley y el reglamento notarial.
Inconformes con dicha determinación, los apelados recurrieron a este Tribunal mediante recurso de certiorari el 25 de febrero de 2000 (KLCE-2000-00187).
El 13 de abril de 2000, este Tribunal dictó Sentencia mediante la cual revocó la Resolución emitida por el tribunal a quo. A tales efectos, esta Curia resolvió que, debido a la complejidad de las alegaciones de las partes, el pleito debía ser adjudicado en sus méritos. Asimismo, determinó que existía controversia entre los documentos presentados para sustentar que la Escritura de Donación había sido leída en dos (2) ocasiones como *1044 lo requiere el ordenamiento jurídico. En particular, este Tribunal determinó que existían controversias entre el Acta de Subsanación y la declaración jurada suscrita por la testigo instrumental y lo que estos documentos indicaban sobre la lectura del documento en controversia. Resolvió esta Curia que era necesario que el Tribunal de Primera Instancia celebrara un juicio para dirimir estas controversias. 
Celebrado el juicio, el Tribunal de Primera Instancia dictó Sentencia el 12 de febrero de 2001, notificada el 21 de febrero de 2001. Mediante dicho dictamen, el tribunal a quo dictaminó que la donación contenida en la Escritura Núm. 16 del 15 de octubre de 1995, era nula por contener errores que no fueron debidamente subsanados y que el terreno y la edificación existentes en el solar de Guánica pertenecían al caudal hereditario de la donante, a saber el apelante y los apelados. Asimismo, dictaminó que no correspondía imponer el pago de una renta al apelante por ocupar la residencia que forma parte del caudal hereditario y ordenó la división del caudal hereditario de acuerdo al testamento abierto otorgado por la donante.
- De dicha determinación, el 5 de marzo de 2001, el apelante solicitó determinaciones de hechos y conclusiones de derecho adicionales, siendo denegada por el tribunal a quo el 20 de marzo de 2001, notificada el 3 de abril de 2001.
Inconforme, el 1 de mayo de 2001, el apelante presentó su recurso de apelación ante este Tribunal. El 2 de noviembre de 2001, los apelados presentaron su alegato. Con el beneficio de ambas comparecencias, procedemos a resolver.
II
En su recurso, el apelante plantea que incidió el Tribunal de Primera Instancia al determinar que la donación en controversia era nula por contener errores que no fueron debidamente subsanados; al determinar que la donante no tenía la capacidad al momento de otorgar la donación basándose en sospechas y en ausencia de prueba contundente relacionada a su alegada incapacidad durante el otorgamiento de la donación; y al determinar que la edificación ubicada en el solar pertenece al caudal hereditario sin establecer la procedencia de los fondos gananciales y privativos para edificarla y sin traer como parte indispensable la sociedad legal de gananciales del demandado.
III
Deberes y Facultades del Notario.
De entrada, es menester recordar varios principios básicos del Derecho Notarial.
El Notario es el conocedor “del Derecho que ejerce una función pública” al “dar fe y autenticidad conforme a las leyes de los negocios jurídicos y demás actos y hechos extrajudiciales que ante él se realicen, sin perjuicio de lo dispuesto en las leyes especiales". Art. 2 de la Ley Núm. 75, supra, 4 L.P.R.A. sec. 2002. Véase, In re: Armando E. González Maldonado, 152 D.P.R._(2000), 2000 J.T.S. 203.
El Notario es quien recibe e interpreta la voluntad de los otorgantes, le da forma legal, redacta los documentos notariales a tal fin y le confiere autoridad a los mismos. Id. En el cumplimiento de “dicha función, el Notario representa la fe pública y la ley para todas las partes”. In re: Colón Muñoz, 131 D.P.R. 121, 127 (1992).
Como es sabido, al autorizar “un documento, [el Notario] presuntamente da fe y asegura que ese documento cumple con todas las formalidades de ley, formal y sustantivamente, que el documento es legal y verdadero, y que se trata de una transacción válida y legítima”. In re: Rivera Alvelo y Ortiz Velázquez, 132 D.P.R. 840, 863 (1993), citando a In re: Feliciano Ruiz, 117 D.P.R. 269, 275 (1986).
En ese momento, el documento queda cobijado de la fe pública y de la presunción juris tantum de que los actos que ve y oye y que lo consignado por el Notario es legal y verdadero. In re: Capestany Rodríguez, 148 D. *1045 P.R._, 99 J.T.S. 113; In re: Colón Muñoz, supra, pág. 150.
A tenor con lo anterior, el Art. 2 de la Ley Notarial, supra, dispone que “[l]afe pública del Notario es plena respecto a los hechos que, en el ejercicio de su junción, personalmente ejecute o compruebe y también respecto a la forma, lugar, día y hora del otorgamiento”.
No obstante lo anterior, las cualidades de autenticidad y validez de un instrumento público están sujetas a que el Notario observe escrupulosamente los requisitos y formalidades impuestos por el ordenamiento jurídico. Cintrón Ramos v. Registrador, 144 D.P.R. 91 (1997); Ramírez Lebrón v. Registrador, 131 D.P.R. 76, 81 (1992); Sucn. Santos v. Registrador, 108 D.P.R. 831, 834 (1979). De esta manera, aunque existe una presunción legal a favor de la veracidad de los hechos consignados en una escritura pública, tal presunción no es concluyente y puede ser rebatida por la correspondiente prueba de hechos contrarios a los consignados en dicha escritura. Vázquez v. Seda, 58 D.P.R. 594 (1941). De igual forma, al otorgarse un acta notarial con todas las solemnidades legales, la ley concede entero crédito a todas las manifestaciones que hace el Notario basadas en sus observaciones personales o los actos realizados por él, a menos que la persona que los impugne demuestre satisfactoriamente su falsedad. Colón v. Shell Co. P.R., 55 D.P.R. 592, 622 (1939). 
A tenor con la facultad del Notario de dar fe del negocio jurídico que ante él se autorice, es necesario que éste se asegure que quienes comparecen son quiénes dicen ser y de esa forma lo exprese, de lo contrario “sobran los [N]otarios”. Cintrón Ramos v. Registrador, supra, a la pág. 103. A fin de alcanzar dicho objetivo, el Tribunal Supremo de Puerto Rico expresó en Sucn. Santos v. Registrador, supra, a la pág. 837 que:

“[e]l mecanismo para lograr la correspondencia real y legítima entre persona y firma, es exigiendo la ley la comparecencia y conocimiento por el Notario. En otras palabras, la fe de conocimiento persigue evitar la suplantación de las partes en el otorgamiento. ”

En cuanto al conocimiento de los otorgantes por parte del Notario, éste tiene el deber de consignar expresamente en el documento público su conocimiento personal de los otorgantes. Art. 15(e) de la Ley Notarial, 4 L.P.R.A. sec. 2033(e); Regla 29 del Reglamento Notarial, 4 L.P.R.A. Ap. XXIV R. 29. De esta manera, en ausencia de conocimiento personal, se hace necesaria la utilización de los medios supletorios para identificar a los comparecientes. Cintrón Ramos v. Registrador, supra, a la pág. 105; Ramírez Lebrón v. Registrador, supra, a la pág. 89. En tal supuesto, el Notario tiene que dejar expresamente establecido que se aseguró de la identidad de los comparecientes mediante los medios supletorios de identificación. Art. 15(e) de la Ley Notarial, supra; Regla 29 del Reglamento Notarial, supra. A su vez, el Notario también tiene que “hacer constar en la escritura que otorga el método supletorio específico de identidad que utilizó para cerciorarse.... ”. Ramírez Lebrón v. Registrador, supra, a la pág. 90. Véase también, Regla 30 del Reglamento Notarial, 4 L.P.R. A. Ap. XXIV R. 30.
El Art. 17 de la Ley Núm. 75, Supra, establece los siguientes medios supletorios de identificación, a saber: (1) la afirmación de un testigo de conocimiento, quién será responsable de la identificación del otorgante y, a su vez, el Notario es responsable de la “identidad del testigo”; (2) la identificación de una de las partes contratantes por la otra, siempre que de esta última de fe de conocimiento el Notario, y (3) la identificación, mediante documentos oficiales con foto y firma emitidos por el Estado Libre Asociado de Puerto Rico, los Estados Unidos, o por uno de los estados de la Unión- o por pasaporte debidamente expedido por autoridad extranjera. 4 L.P.R.A. see. 2035. Véase, además, Regla 30 del Reglamento Notarial, supra.
En síntesis, la fe de conocimiento se consume a través de los siguientes tres (3) elementos, a saber: “(1) la comparecencia física de cada uno de los otorgantes ante el Notario autorizante; (2) que sea en presencia de dicho funcionario que se otorgue el acto notarial; y (3) que el Notario conozca a cada uno de los otorgantes, o en su defecto, que se asegure de su identificación mediante la utilización subsidiaria de los medios supletorios que permite el artículo 17 de la Ley Notarial vigente”. Cintrón Ramos v. Registrador, supra, a la pág. 143. De *1046 esta forma se dificulta “la suplantación de las partes en el otorgamiento” de una escritura pública. In re: Ramos Vélez, 151 D.P.R._, 2000 J.T.S. 94.
Naturaleza de los Instrumentos Públicos.-
Por su parte, la Regla 19 del Reglamento Notarial, 4 L.P.R.A. Ap. XXTV R. 19, establece la naturaleza de los instrumentos públicos:

“Son instrumentos públicos las escrituras públicas y las actas, bien sean en original o en copia certificada.

Llámese "instrumento público matriz" al original que el Notario redacta sobre el contrato, acto o hecho que relata, firmado por los comparecientes y los testigos, si los hubiere, firmado, rubricado, signado y sellado por el Notario.

El contenido propio de las escrituras públicas son las declaraciones de voluntad, los actos jurídicos que impliquen prestación de consentimiento y los contratos de todas clases.

El ámbito de las actas notariales cubre los hechos y circunstancias que presencie, le relaten o le consten al Notario y que por su naturaleza no fueren materia de contrato u otras manifestaciones de voluntad. ”
Por otra parte, el Art. 20 de la Ley Núm. 75, supra, 4 L.P.R.A. sec. 2038, establece que en la autorización de escrituras no será necesaria la intervención de testigos instrumentales, salvo que la reclame el Notario autorizante o cualesquiera de las partes, o cuando alguno de los otorgantes no sepa o no pueda leer o firmar. El ordenamiento jurídico dispone que cuando uno de los otorgantes no sepa o no pueda leer, se dará lectura dos (2) veces en voz alta al instrumento, una por el Notario y otra por el testigo que dicho otorgante designe, de lo cual dará fe el Notario y lo hará constar en el instrumento. Art. 21 de la Ley Núm. 75, supra, 4 L.P.R.A. sec. 2039, y la Regla 32 (B)(3) del Reglamento Notarial, 4 L.P.R.A. Ap. XXIV R. 32 (B)(3). Cuando alguno de los otorgantes fuere ciego o sordo, o no supiera leer y firmar, éste deberá designar un testigo para que a su ruego lea o firme por él la escritura o ambas cosas. Ibíd.
El Art. 25 de la Ley Núm. 75, süpra, 4 L.P.R.A. see. 2043, dispone un procedimiento para el otorgamiento de instrumentos en los cuales los otorgantes, o alguno de éstos, no sabe o no puede firmar. Dicho precepto reza:

“Siempre que cualesquiera de los otorgantes no sepa o no pueda firmar, el [N]otario exigirá que fijen las huellas digitales de sus dos (2) dedos pulgares. Si no los tuviere, de cualesquiera otros, junto a la firma del testigo que a ruego de tal o tales firme y al margen de los demás folios de la escritura, lo cual se hará constar por el [N]otario en la escritura. Si el otorgante u otorgantes carecieren de dedos en las manos, el Notario expresará esta circunstancia y dos (2) testigos instrumentales firmarán a su ruego. ”

(Enfasis suplido)
Por su parte, la Regla 32(C) del Reglamento Notarial, 4 L.P.R.A. Ap. XXIV R. 32(C), sigue esencialmente la misma redacción del Art. 25 de la Ley para establecer el procedimiento a seguir en estos casos:

(C) Formalidades a observar en el otorgamiento

Cuando la incapacidad resulte en que el otorgante no puede firmar, el Notario exigirá que sean fijadas las huellas digitales de los dos (2) dedos pulgares de la mano, o a falta de pulgares, de cualesquiera otros dos, junto a la firma del testigo que a ruego de aquél firme el instrumento, al igual que serán estampadas las iniciales del testigo y las huellas digitales del otorgante al margen de todos los folios. ”

*1047 A tenor con lo anterior, la profesora y tratadista Sarah Torres Peralta señala que los procedimientos que necesariamente han de cumplirse en el proceso de lectura, otorgamiento y autorización en cada una de las situaciones en que media cualquiera de las incapacidades señaladas en los Arts. 21 y 25 de la Núm. 75, supra, según complementados por la Regla 32 del Reglamento, supra, deberán ser cumplidos en forma estricta. Señala además:

“Cualquier desviación de lo dispuesto en el articulado referido tendrá el efecto de anular en términos absolutos el instrumento. Ello es así por cuanto cada uno de los requisitos ya indicados -lectura dos veces en caso del ciego, o huellas digitales cuando no sabe o no se puede firmar-, es parte integrante de la firma. La omisión en que se incurra equivaldrá a ausencia de firma. Entonces entraría en juego el artículo 34(3) de la Ley que dispone para nulidad del instrumento público en caso de ausencia de firma de cualquiera de los otorgantes.

Además, es necesario consignar que el cumplimiento de los procedimientos ya informados tiene que surgir de la faz del instrumento mismo, lo que hará constar el Notario bajo su fe notarial. El incumplimiento del requisito indicado también causaría la nulidad del instrumento, ya que omitir las expresiones en el texto mismo del documento indicadas equivaldría a violación de los requisitos de indispensable cumplimiento de los artículos 21 y 25 de la Ley.” (Enfasis suplido)
Torres Peralta, Id.
Corrección de los Instrumentos Públicos.
En cuanto a la corrección de errores materiales en los instrumentos públicos, el Art. 32 de la Ley Núm. 75, supra, 4 L.P.R.A. see. 2050, dispone que se tendrán por no puestas las adiciones, apostillas, entrerrenglonaduras, raspaduras y tachaduras en los instrumentos públicos, a menos que se salven a continuación del último renglón con la aprobación expresa y la firma de los que deben suscribir el documento.
Por otra parte, conforme disponen el Art. 29 de la Ley Núm. 75, 4 L.P.R.A. see. 2047, y la Regla 39 del Reglamento Notarial, 4 L.P.R.A. Ap. XXIV R. 39, el Notario puede corregir o'subsanar errores u omisiones incurridas en el otorgamiento de un instrumento público mediante la otorgación de un acta de subsanación. Véase, S. Torres Peralta, El Derecho Notarial Puertorriqueño, supra, págs. 8.60-8.61; Urrutia de Basora, Negrón Portillo, Curso de Derecho Notarial Puertorriqueño, Tomo 2, Segunda Edición, 1999, pág. 102.
El Notario podrá otorgar dicha acta de subsanación a instancia de parte o por su propia iniciativa y bajo su fe, firma, signo, rúbrica y sello notarial. Conforme dispone el Art. 29 de la Ley Núm. 75, supra, si se dejase de hacer constar por el Notario algún dato o circunstancia dispuesta en el estatuto, o si se tratase de error en el relato de hechos presenciados por el Notario que corresponda a éste consignar, podrán estas faltas ser subsanadas por el Notario autorizante, por su propia iniciativa o a instancia de cualesquiera de las partes, por medio de un acta notarial en la cual se haga constar el defecto o error, su causa y la declaración que lo subsana.
A manera de ejemplo, la Regla 39 del Reglamento Notarial, supra, menciona algunos de los asuntos que pueden ser objeto de corrección mediante el acta de subsanación:

(E) la falta de expresión notarial sobre la identidad o la capacidad de los otorgantes;

(G) la falta de expresión de que fueron hechas las advertencias y reservas legales;

*1048
(H) la falta de expresión en cuanto a la forma en que fue realizada la lectura del instrumento público. ”

Según señala el comentario a la Regla 39, el propósito de ésta es ilustrar al Notario sobre cuáles asuntos pueden ser objeto de acta de subsanación. “Este puede corregir errores o suplir omisiones que no afectan el negocio jurídico (consentimiento, objeto y causa) mediante la autorización de un acta de subsanación. Al otorgamiento de un acta de subsanación no tienen que comparecer las partes del instrumento previamente autorizado ni estampar sus firmas”. Por el contrario, cuando los errores cometidos afecten el aspecto sustantivo del negocio jurídico previamente autorizado, éstos deberán ser corregidos mediante el otorgamiento de una escritura pública de rectificación, la cual requiere la comparecencia de los mismos otorgantes que comparecieron como tales al instrumento previo. Véase, Comentario a la Regla 39 del Reglamento Notarial, supra; Torres Peralta, El Derecho Notarial Puertorriqueño, supra, pág. 8.62.
IV
Reseñada la norma jurídica que rige la controversia que nos ocupa, procedamos a aplicarla al análisis de los primeros dos (2) errores planteados, los cuales discutiremos en conjunto por estar relacionados.
Conforme surge de la Exposición Narrativa Estipulada, la prueba presentada durante la vista por el apelante consistió del testimonio del Notario, (E.N.P. págs. 2-17), Fiordaliza Taveras (E.N.P. págs. 17-33), testigo instrumental, y el suyo propio (E.N.P. págs. 129-233), quienes ante las preguntas de la representación legal de ambas partes declararon que la Escritura de Donación había sido leída dos (2) veces durante su otorgación, una por el Notario y otra por la testigo instrumental. Además, presentó el testimonio de Buenaventura Quiñones Gómez (E.N.P. págs. 119-129), quien declaró que ayudó al apelante a construir una casa en el solar objeto de esta controversia.
Por su parte, la prueba de los apelados consistió en el testimonio de éstos: Ana Luisa Vélez Rodríguez (E.N. P. 33-62) y Antonio Rafael Vélez Rodríguez (E.N.P. 62-98), y del licenciado Athos Castro (E.N.P. 98-119), quien declaró sobre su función en la liquidación del caudal hereditario de la donante. Ambos apelados declararon que la condición de la donante se había deteriorado bastante y que, a la fecha de otorgarse la Escritura de Donación, cuatro (4) meses antes de su fallecimiento, no tenía la capacidad para tomar decisión alguna. (E.N.P. págs. 39-40, 66).
En su Sentencia el Tribunal de Primera Instancia resolvió, en lo pertinente:

“Durante la vista del caso, se escuchó el testimonio del Notario Arroyo Díaz y de la testigo instrumental de la escritura de donación, Doña Fiordelisa Tavares. Resultando contradictorio el testimonio de las partes, y lo contenido en la escritura de donación, este tribunal entiende que dicha escritura adolece de vicios que causan su nulidad. Igualmente, por la credibilidad concedida a los testimonios, este Tribunal tiene serias dudas sobre la capacidad de doña Rafaela al momento de otorgar la escritura de donación...

“Es claro, ante las circunstancias totales que se presentan a nuestra consideración, que doña Rafaela Rodríguez Chacón, al momento de otorgar la escritura de donación, presentaba serias limitaciones en su condición física que le constaban tanto al demandado como al Notario Arroyo y sin embargo fueron tomadas muy a la ligera y no fueron debidamente consignadas en la escritura. Si bien es cierto que mediante actas aclaratorias se pueden subsanar una serie de defectos, también es cierto que los errores que contiene la escritura de donación dentro del marco factual en el presente caso, hacen surgir serias dudas sobre el otorgamiento, ya que entendemos que procedía actuarse con mayor precaución debiendo consignarse todas las circunstancias de forma clara y no dar oportunidad a dudas. Resultando sospechoso, además, la dilación en: notificar a sus hermanos por parte del demandado de la existencia de dicha escritura, y el registro de dicha escritura, hechos que ocurrieron luego de haberse iniciado trámites (incluyendo varias reuniones con el Ledo. *1049 Athos Castro) para la liquidación del caudal hereditario de acuerdo al testamento otorgado previo a la escritura de donación. ”
Nos plantea el apelante que la Escritura de Donación en controversia cumplió con los requisitos dispuestos en el ordenamiento jurídico, a saber: oferta del donante, aceptación del donatario y conocimiento del donante de dicha aceptación. Asimismo, nos indica que el Notario consignó en el documento haber hecho las advertencias legales al otorgamiento y manifestó que la donante había estampado sus huellas en todos los folios de la escritura por no poder leer ni escribir. Posteriormente, mediante el Acta de Subsanación, se aclaró que el contenido de dicho documento había sido leído en alta voz, conforme el ordenamiento jurídico. Entiende que lo anterior es prueba crediticia de que se cumplieron con todos los requisitos formales y sustantivos.
En su dictamen, señaló el Tribunal de Primera Instancia que, dentro de las circunstancias particulares del caso de marras, en la Escritura de Donación otorgada por la donante se hizo constar lo siguiente: (1) que ésta por su avanzada edad no podía leer ni escribir; (2) la presencia de la testigo instrumental; (3) que la escritura había sido leída por el Notario y que advirtió a la donante de su derecho a leerla y que ésta no lo hizo, pero ratificó el contenido al firmar en todos sus folios; (4) posterior a la dación en fe, es cuando el Notario hizo constar que la donante estampó sus huellas y volvió a dar fe.
Conforme hemos reseñado en la parte III de esta Sentencia, el ordenamiento jurídico requiere que cuando el otorgante no pueda leer, será necesaria la presencia de un testigo instrumental que presencie el acto de lectura, consentimiento, firma y autorización del instrumento. Al instrumento debe dársele lectura dos (2) veces en voz alta, una por el Notario y otra por el testigo instrumental. La exigencia antes mencionada debe consignarse en la escritura. Respecto a este aspecto de medular importancia, se omitió consignar en la Escritura de Donación que la testigo instrumental había leído en voz alta el instrumento conforme lo requiere la Ley y el Reglamento Notarial. Aun cuando el Notario consignó en el Acta Notarial de 23 de julio de 1998, que la testigo instrumental había leído en voz alta la Escritura de Donación durante su otorgamiento, de la declaración jurada suscrita por ésta no surge este hecho. (E.N.P. págs. 26-28).
Esta falta en el documento incide directamente sobre la legalidad de la transacción efectuada. A tales efectos, cuando los errores cometidos afecten el aspecto sustantivo del negocio jurídico previamente autorizado, éstos deberán ser corregidos mediante el otorgamiento de una escritura pública de rectificación, la cual requiere la comparecencia de los mismos otorgantes que comparecieron como tales al instrumento previo. En el caso de autos, está en entredicho la capacidad para consentir de la donante al momento de otorgar la escritura. El consentimiento es un elemento medular para la validez de cualquier negocio jurídico. A su vez, la lectura de un documento por el testigo instrumental a una persona que no puede leer ni escribir, va dirigido al entendimiento, comprensión, consentimiento del contenido, alcance y efectos del documento.
Al amparo de lo antes dicho, recalcamos que, ante los hechos del caso ante nos, no bastaba un Acta de Subsanación, sino de una Escritura Pública de Rectificación. Esta Escritura requería la presencia de todas las partes, nuevamente, para subsanar las deficiencias en el instrumento.
Por otro lado, aunque no surge de la Sentencia dictada, no podemos pasar por alto el hecho de que el Notario admitió durante la vista que hizo constar dos (2) hechos al final de la Escritura de Donación luego de la firma de los comparecientes. (E.N.P. pág. 9-10) Veamos.
Abogado: Le pregunto testigo, mostrándole el exh. Que es la copia certificada que corresponde al exh. por estipulación que es la escritura de donación, su señoría y mostrándole también la escritura de poder general, testigo vamos a examinar esos documentos. Puede mirar la última página de ambos documentos?
Ledo. Arroyo: Estamos.
*1050 Abogado: Tuvo que hacer salvedad en ambos documentos al final?
Ledo. Arroyo: Eso es así.
Abogado: Es correcto. Le puede indicar y leerlo para los efectos del tribunal qué salvedades efectuó usted en ambas escrituras al final?
Ledo. Arroyo: Que estampó sus huellas, que Dña. Rafael (sic) Rodríguez Chacón ha estampado sus huellas en todos los folios de la escritura.
Abogado: Esa es cuál de las escrituras?
Ledo. Arroyo: En ambas.
Abogado: En ambas?
Ledo. Arroyo: En ambas.
Abogado: Eso usted lo salvó antes de firmar los testigos?
Ledo. Arroyo: No creo, no no creo que se haya...
Abogado: O sea, no hizo la salvedad antes de firmar los testigos?
Ledo. Arroyo: No.
Abogado: No?
Ledo. Arroyo: No no.
Abogado: Me leyó una de las salvedades. Cuál es la otra salvedad?
Ledo. Arroyo: Yo hago constar que conozco personalmente a los comparecientes, si esa es la que usted entiende que es la otra salvedad...
Abogado: Bien.
Abogado: Bien, usted preparó estas escrituras por unas instrucciones que le dio a una secretaria con relación a una persona que usted conocía.
Ledo. Arroyo: Si, eso es así.
Abogado: Verdad que es así?
Ledo. Arroyo: Eso es así.
Abogado: Bien, por favor lea esta escritura, en la primera página donde usted da fe, léala.
Ledo. Arroyo: Completo. Doy fe de haberme asegurado de la identidad de los comparecientes por los medios establecidos por la ley notarial su art. 17c, así mismo por sus dichos y mi creencia de su mayor edad, estado civil, profesión y vecindad.
*1051 Abogado: Era una persona que usted conocía.
Ledo. Arroyo: Si, eso es así, Ledo...
Abogado: Conociendo a esa persona, usted viene a salvar al final que la conoce de propio y personal conocimiento?
Ledo. Arroyo: Eso es así.
Conforme surge de lo declarado por el Notario, ambas salvedades las incluyó con posterioridad a la firma de los testigos. Como primera salvedad, lo señalado hace referencia a que, al final de la Escritura de Donación, el Notario dio fe de que la donante había estampado sus huellas en todos los folios del documento. 
La segunda salvedad iba dirigida a que conocía personalmente a los comparecientes. Por otro lado, cabe puntualizar que se desprende de la escritura que el Notario dio fe de haberse asegurado de la identidad de los comparecientes por los medios establecidos por el ordenamiento jurídico. Sin embargo, no surge de la escritura el medio supletorio que utilizó el Notario a fin de identificar a los testigos.
Nos llama la atención esta incongruencia. Máxime, si consideramos que el Notario declaró que se había reunido una o dos semanas antes de otorgarse la escritura de donación con la otorgante, Rafaela Rodríguez Chacón, en la casa de playa en Güánica (E.N.P. pág.3). De hecho, sobre el particular, el Notario indicó:
“OK, a mi originalmente quien me llama es Don Héctor que su señora madre, pues, le va a donar la propiedad, y que ella quiere, como ya nos conocíamos como mi padre había sido estudiante de ella, pues ella quería conocerme y quería que yo le preparara los documentos.”
Sin embargo, la testigo instrumental declaró que doña Rafaela estuvo las cuatro semanas anteriores a la otorgación de la Escritura de Donación en la casa de su hijo, Antonio Vélez Rodríguez, en San Juan (E.N.P. pág. 21). A su vez, surge de la declaración suscrita por la testigo instrumental lo siguiente:

“Como una semana antes de esa fecha, 15 de octubre de 1995, Rafaela Valentina Rodríguez había hecho arreglos directamente con el Licenciado Miguel Arcángel Arroyo Díaz, y quien es hijo de un discípulo de ella, para dejarle a Héctor Luis Vélez Rodríguez el terreno, pues ese siempre había sido su deseo y porque Héctor Luis Vélez Rodríguez era el que menos capital tenía. ”

Por otro lado, el Notario, de no haber conocido personalmente alguno de los comparecientes, debía identificar el método que utilizó para asegurarse del conocimiento de los mismos, acción que no realizó. 
Como señaláramos anteriormente, el Art. 32 de la Ley Notarial, 4 L.P.R.A. see. 2050, dispone que se tendrán por no puestas las adiciones, apostillas, entrerrenglonaduras, raspaduras y tachaduras en los instrumentos públicos, a menos que se salven a continuación del último renglón con la aprobación expresa y la firma de los que deben suscribir el documento. De esta manera, los hechos que consignó el Notario al final de la Escritura de Donación luego de haber sido suscrita por los comparecientes, se tienen por no puestos en la escritura debido a que no fueron salvados como exige el citado Art. 32 de la Ley Notarial. 
En consecuencia, entendemos que en el otorgamiento del documento se incumplió con el procedimiento expresamente dispuesto en el ordenamiento jurídico.
Como señaláramos anteriormente, este artículo y la regla correspondiente requieren que siempre que cualesquiera de los otorgantes no sepa o no pueda firmar, el Notario exigirá que fijen las huellas digitales de sus dos (2) dedos pulgares junto a la firma del testigo al igual que serán estampadas las iniciales del testigo y las *1052 huellas digitales del otorgante al margen de todos los folios, lo cual se hará constar por el Notario en la escritura.
De igual manera, se entiende por no puesto el hecho de que el Notario conocía personalmente a los otorgantes, por lo cual resulta insuficiente lo consignado por el Notario en la escritura de que se aseguró de la identidad de los comparecientes por los medios establecidos en el Art. 17(c) de la Ley Notarial, 4 L.P.R.A. see. 2035(c). Como señaláramos anteriormente, desde el 1992, el Tribunal Supremo de Puerto Rico resolvió, interpretando el Art. 15 de la Ley Notarial, 4 L.P.R.A. sec. 2033(e), que el Notario tiene que “hacer constar en la escritura que otorga, el método supletorio específico de identidad que utilizó para cerciorarse,... Ramírez Lebrón v. Registrador, supra, pág. 90.
Cabe señalar que no obstante el Notario haber otorgado el Acta de Subsanación de 23 de julio de 1998 con el propósito de subsanar los errores cometidos por él en el otorgamiento de la Escritura de Donación, en la misma no se señalan ni se tratan de subsanar lo arriba señalado. 
La Ley Núm. 75, supra, contiene unos requisitos de cumplimiento estricto. Una suma de todos los errores cometidos en el documento, nos llevan a concurrir con el tribunal a quo en su dictamen. Los errores e inconsistencias de la Escritura de Donación y las contradicciones en los testimonios del Notario, y de la testigo instrumental apoyan nuestra determinación.
y
Finalmente, plantea el apelante que el Tribunal de Primera Instancia incidió al determinar que la edificación ubicada en el solar pertenecía al caudal hereditario sin establecer la procedencia de los fondos gananciales o privativos para edificarla.
En su Sentencia, el tribunal a quo determinó lo siguiente:

“Con relación a la renta que se solicita se le imponga al demandado, primero es necesario determinar si en efecto, de la prueba presentada se probó que la edificación existente en el solar pertenece al demandado. Aquél que reclame un derecho tiene el deber de probar mediante prueba fehaciente su derecho mediante preponderancia de la prueba. Del testimonio de los demandantes surge que éstos no constan con evidencia directa de que la edificación perteneciera a sus padres; sin embargo, la prueba circunstancial conlleva a determinar que en efecto así era. Veamos. El testigo Buenaventura Quiñones dijo que ayudó en la construcción de la casa que se hizo en tres días. Que el piso ya estaba hecho y por ser la casa una prefabricada, se pudo hacer en tan corto período de tiempo. El demandado testificó que la casa existente se tumbó y se construyó la nueva todo en un período de siete días mientras sus padres estaban en un crucero y que lo hizo como un regalo. Sin embargo, presentó unos documentos preparados por él donde entre los costos de la casa incluye la preparación del terreno, el piso, pozo séptico y otros detalles que en esencia hacen dudosa su contención de que la casa se construyera en tan corto período de tiempo. Por su parte, los demandantes testificaron que la construcción tardó alrededor de mes y medio, aunque no pudieron especificar dónde sus padres pasaron ese período de tiempo. Es por todo lo antes expuesto y la credibilidad concedida a cada uno de los testigos, que este tribunal se inclina a determinar que la edificación existente en el solar de Caleta de Ensenada del término municipal de Güanica perteneció a los señores Antonio y doña Rafaela y que actualmente pertenecen al caudal hereditario. ”

A tenor con lo anterior, el Art. 294 del Código Civil, 31 L.P.R.A. see. 1161, dispone que “lo edificado, plantado o sembrado en predios ajenos y las mejoras o reparaciones hechas en ellos, pertenecen al dueño de los mismos, con sujeción a lo que se dispone en las secciones siguientes”. A su vez, el Art. 295, 31 L.P.R.A. see. 1162, dispone que “todas las obras, siembras y plantaciones se presumen hechas por el propietario y a su costa, mientras no se pruebe lo contrario”. En su interpretación de este precepto, el Tribunal Supremo de Puerto Rico resolvió que la edificación de una casa en terrenos pertenecientes a otro no puede impedir que el dueño recobre la posesión del sitio valiéndose del desahucio, a menos que el demandado tenga algún título existente; la presunción, controvertible es que tal edificación pertenece al dueño del terreno y no queda destruida por manifestaciones de *1053 que el demandado en desahucio en precario construyó la casa y es dueño de la misma. Schuck v. Verdejo, 43 D.P.R. 955 (1932).
De esta forma, en ausencia de un título que acreditara la propiedad del apelante sobre la edificación construida en el solar objeto del pleito, éste venía obligado a presentar prueba para rebatir la presunción de que tal edificación pertenecía a sus padres que eran los dueños del terreno; tal presunción no queda destruida por las manifestaciones del apelante de que construyó la casa y es dueño de la misma. Id.
Según resolvió el tribunal a quo, “el demandado testificó que la casa existente se tumbó y se construyó la nueva, todo en un período de siete días mientras sus padres estaban en un crucero y que lo hizo como un regalo. Sin embargo presentó unos documentos preparados por él donde entre los costos de la casa incluye la preparación del terreno, el piso, pozo séptico y otros detalles que en esencia hacen dudosa su contención de que la casa se construyera en tan corto período de tiempo”.
Es evidente que el Tribunal de Primera Instancia no le concedió credibilidad alguna al testimonio del apelante. Es norma fundamental de nuestro ordenamiento jurídico de que los tribunales apelativos, en ausencia de error, pasión, prejuicio o parcialidad, no deben intervenir con las determinaciones de hechos, la apreciación de la prueba y las adjudicaciones de credibilidad realizadas por los tribunales de instancia. Trinidad García v. Chade, 152 D.P.R._(2001), 2001 J.T.S. 10.
VI
Por los fundamentos arriba esbozados, se Confirma la Sentencia apelada.
El Juez Aponte Jiménez emite voto concurrente y disidente.
Así lo acordó y manda el Tribunal y lo certifica la Señora Secretaría General.
Aida I. Oquendo Graulau
Secretaria General
ESCOLIOS 2002 DTA 61
1. Se alega que en dicho solar, previo al 1982, existía una casa de madera, la cual compró el esposo de la donante cuando se vendieron las casas de Central Guánica. En el 1982, se alega el apelado reemplazó dicha vivienda de madera por una casa prefabricada.
2. Véase, Apéndice XI del recurso de apelación.
3. Véase, Apéndice IX del Alegato de los apelados. La declaración jurada fue presentada por el apelante en apoyo a su solicitud de sentencia sumaria.
4. Véase, Apéndice XIX del recurso de apelación.
5. Véase, Apéndice IX del Alegato de los apelados. De la declaración jurada suscrita por la testigo instrumental, no surge que ella haya leído en voz alta la escritura de donación durante su otorgamiento.
6. La Exposición de Motivos de la Ley Núm. 75, supra advierte que "[e]n esa función, el Notario puertorriqueño no es abogado de ninguno de los otorgantes, no representa a cliente alguno, representa a la fe pública, representa la ley para todas partes”. Leyes de Puerto Rico de 1987, pág. 262.
7. A tenor con lo anterior, véase, Sucn. Antonio Osorio v. Osorio, 102 D.P.R. 249 (1974). Allí, al quedar rebatida la presunción de validez del acto notarial, correspondía a la parte amparada por la Fe Notarial, el peso de probar la validez de la escritura.
*1054 8. “[E]l testigo de conocimiento es aquella persona bien conocida del Notario, y quien acredita en forma íntegra y sin lugar a dudas la identidad del otorgante u otorgantes que no son conocidos del Notario. Es el testigo que establece el eslabón del conocimiento entre el Notario y el otorgante u otorgantes en la situación indicada. ” Torres Peralta, El Derecho Notarial Puertorriqueño, Ed. Especial 1995, San Juan, Publicaciones STP, Inc., 1995, pág. 9.14.
9. Torres Peralta, El Derecho Notarial Puertorriqueño, Ed. Especial 1995, San Juan, Publicaciones STP, Inc., 1995., pág., 10.11.
10. El Art. 21 de la Ley Núm. 75, 4 L.P.R.A. see. 2039, dispone:

"Cuando no sepa o no pueda leer alguno de los otorgantes, se dará lectura dos (2) veces en voz alta al instrumento de que se trate, una por el notario y otra por el testigo que dicho otorgante designe, de lo cual dará fe el notario.

Cuando alguno de los otorgantes fuere ciego o sordo, que no supiere leer y firmar, éste deberá designar un testigo para que a su ruego, lea o firme por él la escritura o ambas cosas. El notario hará constar estas circunstancias. ”

Véase también, la Regla 32(B) del Reglamento Notarial, 4 L.P.R.A. Ap. XXIV, R. 32(B).
11. Véase, Declaración Jurada suscrita por la testigo instrumental, Fiordaliza Taveras, el 17 de mayo de 1999, Apéndice 9 del Alegato de la parte apelada. Este documento fue presentado por el apelante en apoyo a una moción solicitando sentencia sumaria presentada ante el Tribunal de Primera Instancia. Véase, Apéndice IV del recurso de Apelación.
12. De hecho, se observa que la inclusión de esta dación en fe es en una letra diferente de maquinilla a la del documento.
13. Sucn. Santos v. Registrador, supra, a la pág. 837; Art. 15(e) de la Ley Notarial, 4 L.P.R.A. sec. 2033(e); Regla 29 del Reglamento Notarial, 4 L.P.R.A. Ap. XXIV R. 29
14. Los hechos consignados luego de la firma de los otorgantes son: que la donante estampó sus huellas digitales en cada folio de la escritura, y que el Notario conocía a todos los comparecientes personalmente.
15. Véase, Acta Notarial de 23 de julio de 1998, Apéndice XI del recurso de Apelación.